**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SPIN MASTER LTD., a Canadian corporation and SPIN MASTER, INC., a Delaware corporation, )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," )<br><br>Defendants. ) | Case No. 17-cv-05365 |

**COMPLAINT**

Plaintiffs Spin Master Ltd. and Spin Master, Inc. (collectively, "Spin Master" or "Plaintiff") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Spin Master's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold Counterfeit PAW Patrol Products using counterfeit versions of Spin Master's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Spin Master substantial injury in the State of Illinois.

## II. INTRODUCTION

3.    This action has been filed by Spin Master to combat online counterfeiters who trade upon Spin Master's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including children's clothing, toys, and other goods, using counterfeit versions of Spin Master's federally registered trademarks (the "Counterfeit PAW Patrol Products"). The Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine products, while actually selling Counterfeit PAW Patrol Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit PAW Patrol Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of

transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Spin Master is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit PAW Patrol Products over the Internet. Spin Master has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4. Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 450 Front Street West, Toronto, Ontario, Canada.

5. Plaintiff Spin Master, Inc. is a Delaware corporation with its principal place of business at 11858 La Grange Ave., Suite C, Los Angeles, California 90025. Spin Master, Inc. is Spin Master Ltd.'s subsidiary and exclusive licensee in the United States.

6. Spin Master is a leading global children's entertainment company that creates, designs, manufactures and markets a diversified portfolio of innovative toys, games, products and entertainment properties. Since 2005, Spin Master has received 64 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 18 wins across a variety of product categories. Spin Master has been recognized with 12 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters and content, but also monetize that content through the creation, sale and licensing of products.

3

7.    One of the categories of toys widely associated with Spin Master is PAW Patrol, a line of toys (collectively referred to herein as "PAW Patrol Products") based on the hit animated pre-school television series of the same name that has aired on Nickelodeon in the United States since August 2013 and has been sold to television networks in over 160 countries around the world.

8.    PAW Patrol toy sales have generated millions of dollars in revenue for Spin Master and increased Spin Master's presence in the preschool toy market.  In fact, PAW Patrol has since become one of Spin Master's most profitable brands. Analysts for the National Bank of Canada reported that toys and games based on the show accounted for approximately $245 million U.S. (or 25 percent) of Spin Master's gross product sales for 2015.

9.    PAW Patrol Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine PAW Patrol Products are instantly recognizable as such.  The PAW Patrol brand has become a global success that resonates with children worldwide, and PAW Patrol Products are among the most recognizable in the world.  PAW Patrol Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Target, Toys "R" Us, and Wal-Mart, and through the official pawpatrol.com website, which was launched in 2011 and began e-commerce sales in 2014.

10.    Spin Master began using the PAW PATROL trademarks in 2014 and has continuously sold products under the PAW PATROL and other trademarks (collectively, the "PAW PATROL Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the PAW PATROL Trademarks.  Spin Master's use of the marks has also built substantial goodwill in and to the PAW PATROL Trademarks.  The PAW

PATROL Trademarks are famous marks and valuable assets of Spin Master. PAW Patrol

Products typically include at least one of the registered PAW PATROL Trademarks.

11.   Several of the PAW PATROL Trademarks are registered with the United States

Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,601,882 | RYDER | For: Toys, games and playthings, namely, dolls and accessories therefor, character figures and character figure play sets, toy figurines in class 028. |
| 4,614,743 | PAW PATROL | For: Toys, games and playthings, namely, dolls and accessories therefor, action figures, action figure play sets, character figures and toy animal figures, character figure and toy animal figure play sets, toy figurines, toy pets and accessories therefor, plush toys, toy vehicles, children's multiple activity toys, children's multiple activity toys featuring interactive activities and digital applications, toy building sets, educational toys, ride-on toys, construction toys, parlour games, puzzles, role-playing games, card games, board games, interactive board games, action skill games, action target games, electronic hand-held games for use with external display screen or monitor and electronic action toys in class 028. |
| 4,675,681 | PAW PATROL | For: Paper, cardboard and goods made from these materials, namely, paper goodie bags, cardboard boxes, notebooks, sketchbooks, drawing paper, craft paper, wrapping paper and decorative paper; printed matter, namely, photographs, calendars, diaries, colouring books and sticker books; books and publications, namely, books, magazines and comic books featuring animation; arts and crafts kits, namely, |

| | | |
|---|---|---|
| | | arts and crafts paint kits and paint sold therewith; children's arts and crafts paper kits and accessories therefor, namely, stickers and marking stamps, fabric and wax sheets with die cut shapes and form molds for creating and decorating; arts and crafts kits containing pens, pencils, crayons, markers, notebooks and sketchbooks, wrapping paper, decorative paper, stickers, glue, tape, stencils, paint brushes, drawing templates and rulers in class 016. |
| 4,779,745 | RUBBLE | For: Toys, games, and playthings, namely, dolls, toy animals, plush animals, character figures and character figure play sets, toy figurines, and accessories for all the foregoing in class 028. |
| 4,779,746 | MARSHALL | For: Toys, games, and playthings, namely, dolls, toy animals, plush animals, character figures and character figure play sets, toy figurines, and accessories for all the foregoing in class 028. |
| 4,779,747 | CHASE | For: Toys, games and playthings, namely, dolls, toy animals, plush animals, character figures and character figure play sets, toy figurines, and accessories for all the foregoing in class 028. |
| 4,779,748 | ROCKY | For: toys, game and playthings, namely, dolls, toy animals, plush animals, and accessories for all the foregoing; all the foregoing relating to an animated television series, and not relating to the sport of boxing, or a movie or character relating to the sport of boxing in class 028. |
| 4,779,749 | SKYE | For: Toys, games, and playthings, namely, dolls, toy animals, plush animals, character figures and character figure play sets, toy figurines, and accessories for all the foregoing in class 028. |
| 4,792,695 | ZUMA | For: toys, games and playthings, namely, dolls, toy animals, plush animals, and accessories for |

| | | |
|---|---|---|
| | | all the foregoing in class 028. |
| 4,848,752 | PAW PATROL | For: Computer software for authoring, downloading, transmitting, receiving, editing, extracting, encoding, decoding, displaying, storing and organizing text, graphics, images, audio files, video files, electronic games and electronic publications; computer software for use in searching, reviewing, purchasing and downloading electronic games and electronic publications; computer software applications for use in downloading, playing and reviewing audio, text and other digital content in the field of children's entertainment; computer game discs, computer game cartridges; pre-recorded audio and visual videos, CDs, tapes and DVDs featuring fictional characters and activities for children, movies in the field of children's entertainment, television programs in the field of children's entertainment, books in the field of children's entertainment, music and instructions for use of toys in class 009.<br><br>For: Umbrellas; luggage tags; tote bags; carry-all bags; backpacks; rucksacks; school bags; fanny packs; messenger bags; handbags; wallets and purses; athletic bags; travel bags; knapsacks; change purses; duffle bags; beach bags in class 018.<br><br>For: Clothing, namely, children's clothing in the nature of shorts, t-shirts, sweaters, dresses, skirts and pants, play clothing, namely, costumes for use in children's dress up play, loungewear, sleepwear and undergarments; footwear, namely, children's footwear; headgear, namely, hats, caps, head bands and earmuffs in class 025. |
| 4,932,184 | EVEREST | For: Dolls; Plastic character toys; Play figures; Playsets for toy figures; Plush toys; Rubber |

| | | |
|---|---|---|
| | | character toys; Toy animals and accessories therefor; Toy figures in class 028. |
| 5,087,871 | TRACKER | For: Dolls; Plastic character toys; Play figures; Playsets for toy figures; Rubber character toys; Toy animals and accessories therefor; Toy figures in class 028. |
| 5,218,798 |  | For: Computer software for authoring, downloading, transmitting, receiving, editing, extracting, encoding, decoding, displaying, storing and organizing text, graphics, images, audio files, video files, electronic games and electronic publications; computer software for use in searching, reviewing, purchasing and downloading electronic games and electronic publications; computer software applications for use in downloading, playing and reviewing audio, text and other digital content in the field of children's entertainment; computer software, namely, apps for mobile phones, smart phones, computers and tablets featuring interactive video games; computer game software; computer game discs, computer game cartridges; pre-recorded audiotapes, videotapes, CDs, and DVDs featuring movies and television programs about fictional characters, educational activities for children, audio books for children about fictional characters, music and instructions for use of toys in class 009.<br><br>For: Paper, cardboard and goods made from these materials, namely, paper goodie bags, cardboard boxes, notebooks, sketchbooks, drawing paper, craft paper, wrapping paper and decorative paper; printed matter, namely, photographs, calendars, diaries, coloring books and sticker books; stationery; books and publications, namely, books, magazines and comic books featuring animation; arts and crafts |

kits, namely, arts and crafts paint kits and paint sold therewith; children's arts and crafts paper kits and accessories therefor, namely, stickers and marking stamps, fabric and wax sheets with die cut shapes and form molds for creating and decorating; arts and crafts kits containing pens, pencils, crayons, markers, notebooks and sketchbooks, wrapping paper, decorative paper, stickers, glue, tape, stencils, paint brushes, drawing templates and rulers in class 016.

For: Umbrellas; luggage tags; tote bags; carry-all bags; lunch bags of nylon and canvas; backpacks; rucksacks; school bags; fanny packs; messenger bags; handbags; wallets and purses; athletic bags; travel bags; knapsacks; change purses; duffle bags; beach bags in class 018.

For: Clothing, namely, children's clothing in the nature of shorts, t-shirts, sweaters, dresses, skirts and pants, play clothing, namely, costumes for use in children's dress up play, loungewear, sleepwear and undergarments; footwear, namely, children's footwear; headgear, namely, hats, caps, head bands and earmuffs in class 025.

For: Toys, games and playthings, namely, dolls and accessories therefor, action figures, action figure play sets, character figures and toy animal figures, character figure and toy animal figure play sets, toy figurines, toy pets and accessories therefor, plush toys, toy vehicles, children's multiple activity toys, children's multiple activity toys featuring interactive activities and digital applications, toy building sets, educational toys, ride-on toys, construction toys, parlour games, puzzles, role-playing games, card games, board games, interactive board games, action skill games, action target games, electronic hand-held games for use with external

| | | display screen or monitor and electronic action toys in class 028.<br><br>For: Entertainment services in the nature of on-going television programs in the field of children's entertainment; entertainment, namely, a continuing animated television show broadcast over television, satellite, audio, and video media; entertainment services, namely, providing radio programs in the field of children's entertainment; entertainment services, namely, providing on-going television programs in the field of children's entertainment via a global computer network; entertainment services, namely, providing podcasts in the field of children's entertainment; entertainment services, namely, providing webcasts in the field of children's entertainment; entertainment services, namely, providing on-line computer games; entertainment services, namely, providing video podcasts in the field of children's entertainment; entertainment services, namely, providing temporary use of non-downloadable interactive games; entertainment services, namely, providing temporary use of non-downloadable electronic games; entertainment services, namely, providing temporary use of non-downloadable computer games; entertainment services, namely, providing temporary use of non-downloadable video games and distribution thereof in class 041. |
|---|---|---|

12.     The above U.S. registrations for the PAW PATROL Trademarks are valid, subsisting, and in full force and effect.  The registrations for the PAW PATROL Trademarks constitute *prima facie* evidence of their validity and of Spin Master's exclusive right to use the PAW PATROL Trademarks pursuant to 15 U.S.C. § 1057 (b).  True and correct copies of the

United States Registration Certificates for the above-listed PAW PATROL Trademarks are attached hereto as **Exhibit 1**.

13.     The PAW PATROL Trademarks are distinctive when applied to the PAW Patrol Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards.   Whether Spin Master manufactures the products itself or contracts with others to do so, Spin Master has ensured that products bearing the PAW PATROL Trademarks are manufactured to the highest quality standards.

14.     The PAW PATROL Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the PAW Patrol Products have enabled the PAW Patrol brand to achieve widespread recognition and fame and have made the PAW PATROL Trademarks some of the most well-known marks in the toy and children's entertainment industries.   The widespread fame, outstanding reputation, and significant goodwill associated with the PAW Patrol brand have made the PAW PATROL Trademarks valuable assets of Spin Master.

15.     Spin Master has expended substantial time, money, and other resources in advertising and promoting the PAW PATROL Trademarks.   In fact, Spin Master has expended millions of dollars in advertising, promoting and marketing featuring the PAW PATROL Trademarks.   PAW Patrol Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.   As a result, products bearing the PAW PATROL Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Spin Master.   PAW Patrol Products have become among the most popular of their kind in the U.S. and the world.   The PAW PATROL Trademarks have achieved tremendous fame and recognition which has only

11

added to the inherent distinctiveness of the marks. *Id.* As such, the goodwill associated with the PAW PATROL Trademarks is of incalculable and inestimable value to Spin Master.

16.     Genuine PAW Patrol Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the PAW Patrol brand.

17.     Since at least as early as 2014, genuine PAW Patrol Products have been promoted and sold at the official pawpatrol.com website. Sales of PAW Patrol Products via the pawpatrol.com website are significant. The pawpatrol.com website features proprietary content, images and designs exclusive to the PAW Patrol brand.

**The Defendants**

18.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit PAW Patrol Products to consumers within the United States, including the State of Illinois.

19.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the PAW PATROL Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Spin Master to learn Defendants' true identities and the exact interworking of

12

their counterfeit network.  In the event that Defendants provide additional credible information regarding their identities, Spin Master will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of the PAW Patrol brand has resulted in its significant counterfeiting. Consequently, Spin Master has a worldwide anti-counterfeiting program and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, Spin Master has identified hundreds of marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit PAW Patrol Products to consumers in this Judicial District and throughout the United States.  Despite Spin Master's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion.  Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

21.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal.  The Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an

13

authorized retailer. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Spin Master has not licensed or authorized Defendants to use any of the PAW PATROL Trademarks, and none of the Defendants are authorized retailers of genuine PAW Patrol Products.

22.     Many Defendants also deceive unknowing consumers by using the PAW PATROL Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings in order to attract consumers searching for genuine PAW Patrol Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine PAW Patrol Products. Other Defendants only show the PAW PATROL Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for genuine PAW Patrol Products.

23.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, Counterfeit PAW Patrol Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit PAW Patrol Products were manufactured by and come from a common source and that Defendants are interrelated.  The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, and the use of the same text and images, including content copied from Spin Master's official pawpatrol.com website.

25.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

26.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Spin Master's enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters

regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

27.     Defendants, without any authorization or license from Spin Master, have knowingly and willfully used and continue to use the PAW PATROL Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit PAW Patrol Products into the United States and Illinois over the Internet.  Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit PAW Patrol Products into the United States, including Illinois.

28.     Defendants' unauthorized use of the PAW PATROL Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit PAW Patrol Products, including the sale of Counterfeit PAW Patrol Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Spin Master.

### COUNT I
### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29.     Spin Master hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 28.

30.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered the PAW PATROL Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The PAW PATROL Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from PAW Patrol Products offered, sold or marketed under the PAW PATROL Trademarks.

31.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the PAW PATROL Trademarks without Spin Master's permission.

32.     Spin Master is the exclusive owner of the PAW PATROL Trademarks.  Spin Master's United States Registrations for the PAW PATROL Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Spin Master's rights in the PAW PATROL Trademarks, and are willfully infringing and intentionally using counterfeit versions of the PAW PATROL Trademarks.  Defendants' willful, intentional and unauthorized use of the PAW PATROL Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit PAW Patrol Products among the general public.

33.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34.     Spin Master has no adequate remedy at law, and if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the PAW PATROL Trademarks.

35.     The injuries and damages sustained by Spin Master have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit PAW Patrol Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36.     Spin Master hereby re-alleges and incorporate by reference the allegations set forth in paragraphs 1 through 35.

37.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit PAW Patrol Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Spin Master or the origin, sponsorship, or approval of Defendants' Counterfeit PAW Patrol Products by Spin Master.

38.     By using the PAW PATROL Trademarks on the Counterfeit PAW Patrol Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit PAW Patrol Products.

39.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit PAW Patrol Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40.     Spin Master has no adequate remedy at law and, if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the associated goodwill of the PAW Patrol brand.

### COUNT III
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

41.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40.

42.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit PAW Patrol Products as those of Spin Master, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association

with genuine PAW Patrol Products, representing that their products have Spin Master's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

43. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

44. Spin Master has no adequate remedy at law, and Defendants' conduct has caused Spin Master to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Spin Master will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Spin Master prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the PAW PATROL Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PAW Patrol Product or is not authorized by Spin Master to be sold in connection with the PAW PATROL Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine PAW Patrol Product or any other product produced by Spin Master, that is not Spin Master's or not produced under the authorization, control, or supervision of Spin Master and approved by Spin Master for sale under the PAW PATROL Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit PAW Patrol Products are those sold under the authorization, control or supervision of Spin Master, or are sponsored by, approved by, or otherwise connected with Spin Master;

    d. further infringing the PAW PATROL Trademarks and damaging Spin Master's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Spin Master, nor authorized by Spin Master to be sold or offered for sale, and which bear any of Spin Master's trademarks, including the PAW PATROL Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Spin Master's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the PAW PATROL Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the PAW PATROL Trademarks; and

    c.  take all steps necessary to prevent links to the Online Marketplace Accounts identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Online Marketplace Accounts from any search index;

3) That Defendants account for and pay to Spin Master all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the PAW PATROL Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Spin Master be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PAW PATROL Trademarks;

5) That Spin Master be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 21st day of July 2017.      Respectfully submitted,


                    /s/ Justin R. Gaudio
                    Amy C. Ziegler
                    Justin R. Gaudio
                    Christopher S. Hermanson
                    Jessica L. Bloodgood
                    Greer, Burns & Crain, Ltd.
                    300 South Wacker Drive, Suite 2500
                    Chicago, Illinois 60606
                    312.360.0080
                    312.360.9315 (facsimile)
                    aziegler@gbc.law
                    jgaudio@gbc.law
                    chermanson@gbc.law
                    jbloodgood@gbc.law

                    *Counsel for Plaintiffs*
                    *Spin Master Ltd. and Spin Master, Inc.*